UNITED STATES DISTRICT COURT **91 - 8688**
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

- - - - - - - - - - - - - - - - - -X

KEVIN LEWIS, on behalf of himself  :     Civil Action No.
and all others similarly situated, :
                                   :
              Plaintiff,           :
                                   :
       -against-                   :     CLASS ACTION COMPLAINT
                                   :
CASCADE INTERNATIONAL, INC.,       :
VICTOR G. INCENDY, JOHN T. SIRMANS,:
JR. and BERNARD H. LEVY,           :
                                   :
              Defendants.          :
- - - - - - - - - - - - - - - - - -X



          Plaintiff, by and through his attorneys Abbey &

Ellis, as and for his complaint, alleges as follows:


                    JURISDICTION AND VENUE


          1.   The claims alleged herein arise under Sections

10(b) and 20 of the Securities Exchange Act of 1934 (the

"Exchange Act"), 15 U.S.C. § 78j, and the Securities and

Exchange Commission (the "SEC") Rule 10b-5 promulgated

thereunder by the SEC, 17 C.F.R. 240.10b-5, and common law.


          2.   Jurisdiction is conferred upon this Court by

Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and 28

U.S.C. § 1331 and the principles of pendent jurisdiction.

3.    Venue exists and this Court has personal
jurisdiction of the defendants pursuant to Section 27 of the
Exchange Act, 15 U.S.C. § 78aa.  Furthermore, many of the acts
and transactions constituting the violations of law herein
complained of occurred within this judicial district.  In
connection with the acts alleged herein, the defendants,
directly or indirectly, used the means and instrumentalities
of interstate commerce, including the United States mails and
facilities of a national securities exchange.

## THE PARTIES

4.    Plaintiff Kevin Lewis ("Lewis"), at all
relevant times, was and is a citizen and resident of the State
of Michigan, residing at 26036 Hendrie Road, Huntington Woods,
Michigan 48070.

5.    Plaintiff Lewis, relying on the integrity of
the market, purchased shares of Cascade International, Inc.
("Cascade" or the "Company") during the Class Period.

6.    Cascade, at all relevant times, was and is a
corporation duly organized and existing under the laws of the
State of Delaware and has its principal executive offices
located at 2424 North Federal Highway, Lake Wyman Plaza, Suite
318, Boca Raton, Florida 33432 and transacted business within
this district.  Cascade's primary business involves the

formulation, manufacture and retail sale of proprietary cosmetics and skin care products and the retail sale of imported designer fragrances. The Company also operates women's clothing stores from which it also sells its proprietary cosmetics and skin care products and imported designer fragrances.

7. Defendant Victor G. Incendy ("Incendy") is, and at all relevant times has been, President, Chief Executive Officer and Chairman of the Board of the Company. As of September 20, 1991, Incendy owned approximately 9,924,464 shares in the Company or approximately 51% of the outstanding voting stock.

8. Defendant John T. Sirmans ("Sirmans") is, and at all relevant times has been, Vice President, Secretary and a member of Cascade's Board of Directors.

9. Defendant Bernard H. Levy ("Levy") is, and at all relevant times has been, the Company's independent auditor and operates under the name "Bernard H. Levy."

10. The individual defendants, Incendy and Sirmans, each of whom were officers and/or directors of Cascade at all relevant times, had a duty, because of said positions, to disseminate complete, accurate and truthful information in

connection with Cascade's operations, financial results and future business prospects.

11.  Defendant Incendy, because of the positions he held with the Company (President, Chief Executive Officer and Chairman of the Board -- the most senior executive positions and those with the greatest authority over and responsibility for, the Company's day-to-day operations) and his ownership of a majority of the Company's outstanding voting stock, and his access to material inside information about Cascade, at the time of the wrongs alleged herein was a controlling person of Cascade within the meaning of Section 20(a) of the Exchange Act.  Incendy had and exercised the power and influence to cause Cascade to engage in the illegal practices complained of herein.

<u>PLAINTIFF'S CLASS ACTION ALLEGATIONS</u>

12.  Plaintiff brings this action as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), on behalf of all persons who purchased shares of Cascade common stock during the period May 7, 1991 through October 29, 1991 (the "Class Period") and were damaged thereby (the "Class").  Excluded from the Class are defendants herein, officers and directors of Cascade, members of the immediate family of each of the individual

-4-

defendants and the affiliates, successors and assigns of the defendants.

13.  The members of the Class are so numerous that joinder of all members is impracticable.  As of September 20, 1991, Cascade had 19,356,319 shares of common stock outstanding.  As of September 24, 1991, there were approximately 1,188 shareholders of record.  Throughout the Class Period, the stock was actively traded on the NASDAQ National Market System.

14.  Plaintiff will fairly and adequately protect the interests of the other members of the Class and has retained competent counsel experienced in class action litigation under the federal securities laws to further insure such protection.  Plaintiff is a member of the Class and his claims are typical of the claims of the other members of the Class.  Plaintiff does not have interests antagonistic to, or in conflict with, the Class.

15.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy since the members of the Class are so numerous and their residences so widespread that joinder of all members is impracticable.

16.   There are numerous questions of law and fact violated herein which are common to the Class and which predominate over any questions affecting individual members of the Class, including:

(a)   whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)   whether reports, press releases and other documents and statements disseminated and/or filed with the SEC by Cascade and the individual defendants during the Class Period omitted to state and/or misrepresented material facts concerning the business, finances and prospects of Cascade;

(c)   whether defendants participated in and pursued the common course of conduct complained of herein;

(d)   whether defendants acted willfully, recklessly, or with gross negligence in omitting and/or misrepresenting material facts or in aiding and abetting the making of such statements;

(e)   whether the market price of Cascade common stock during the Class Period was manipulated and/or artificially inflated due to the non-disclosure and/or misrepresentations complained of herein; and

-6-

(f)   whether plaintiff and other Class members have sustained damages and, if so, the appropriate measure of their damages.

## COUNT I

### Cascade and Incendy's Primary Violation of the Federal Securities Laws

17.   Paragraphs 1 through 16, inclusive, are hereby repeated, reiterated and realleged as if fully set forth herein.

18.   As previously stated, Cascade's primary business involves the formulation, manufacture and retail sale of proprietary cosmetics and skin care products and the retail sale of imported designer fragrances.  These activities are conducted through a subsidiary, Jean Cosmetics Distribution Center, Inc. ("Jean Cosmetics"), and the products sold at the Company's own cosmetic counters and other retail outlets.  The company also operates women's apparel stores under names such as JB's Boutiques, Boutiques Allison and Boutiques Diana and sells Jean Cosmetics within these women's apparel stores.

19.   Cascade states within the 10-K for the fiscal year ended June 30, 1991 ("The 10-K"), that for the fiscal year ended June 30, 1989, 1990 and 1991, Jean Cosmetics accounted for $9,833,000 (38.2%); $14,050,000 (26.8%); and $16,245,000 (27.4%) respectively, of the Company's total

-7-

sales.  For the same fiscal years, also according to The 10-K, the Company's women's clothing stores accounted for $15,875,000 (61.8%); $38,394,000 (73.2%) and $42,964,000 (72.6%), respectively, of the Company's total sales.

20.  On or about February 13, 1991, the Company reported that revenues for the six months ended December 31, 1990 had increased 18% to $23,685,000 over the similar period in the previous year.  Net income from operations reportedly increased 24.8% to $4,081,000 or $.211 per share from $3,270,000 or $.169 per share for the previous year.

21.  On or about May 7, 1991, Cascade released its earnings report for the quarter ended March 31, 1991.  Once again, the Company reported record earnings and stated that revenues were up 19.6% and income was up 32.1% in the first nine months of the fiscal year, as compared to the first nine months of the previous year.

22.  During the Class Period, the investing public was made aware of Cascade's reports of increased earnings.  By way of example:

(a)  In a June 3, 1991 <u>Business Week</u> article discussing Cascade, Jim Awad, President of BMI Capital, stated:

-8-

Despite Cascade's heady climb, the stock
is still very undervalued based on the
Company's snappy growth prospects.  The
stock's 27% return on equity, plus the
Company's low price-earnings ratio of 11
make Cascade one of the hottest bargains
around;

(b)   On or about August 19, 1991, in The

Wall Street Journal, Bert Boksen, an analyst

with Raymond James Associates, was quoted as

promoting Cascade's stock which was selling for

approximately $11.50 per share.  Boksen

explained that Cascade's strategy was to

acquire bankrupt clothing retailers, make the

stores profitable and install cosmetic counters

in the stores.  This was the tactic that

Cascade previously used and would seek to use

regarding Conston Corporation ("Conston").

Boksen was quoted to say "[t]he beauty of

acquiring a bankrupt property is you can

renegotiate the leases, in certain cases

renegotiate the debt and close unprofitable

locations."  Furthermore, the profit margins of

cosmetic counters can be high.  In light of

this, Boksen explained that Cascade's stock was

still not overpriced and expected Cascade to

earn $.70 a share in the 1992 fiscal year; and

(c)  On or about August 20, 1991, the <u>Dow Jones News Wire</u> reported that, notwithstanding a drop in the price of Cascade's shares during the previous day's trading, Mr. Boksen was promoting Cascade's stock and expected Cascade to report earnings per share of $.58 for the 1991 fiscal year and $.70 per share for the 1992 fiscal year.  In fact, on or about September 11, 1991, Cascade announced its projected earnings per share for the fiscal year ended June 30, 1991 would be $.58 per share versus the 1990 fiscal year's earnings of $.4003 per share, representing a 44.9% increase.

23.  On or about September 23, 1991, in the <u>Institutional Investor</u> portfolio letter, James Awad publicly stated that Cascade's stock was a bargain.  In response to rumors about Incendy's exploiting Cascade's relationship with Conston and Cascade's financial condition, he was quoted to say that "[t]hey are inaccurate rumors causing the price to fall.  When earnings come out it will show the rumors are false."

24.  On or about September 27, 1991, Cascade reported record high revenue and earnings for the fiscal year

-10-

ended on June 30, 1991.  Net income had increased 44.4% to
$11,188,000 or $.58 per share from $7,749,000 or $.4003 per
share in the previous year.  Cascade attributed the increased
profits primarily to strong performance in its cosmetic
retailing business and steady growth in its apparel business.

25.  On or about September 28, 1991, Cascade filed
The 10-K with the Securities and Exchange Commission.  Within
The 10-K, defendants reiterated the previously disclosed
positive earnings results.

26.  Immediately thereafter, Cascade's true
financial condition began to be revealed.

27.  On or about October 2, 1991, the Dow Jones News
Wire reported that the Overpriced Stock Service Newsletter
(the "Newsletter") in its issue mailed on or about September
27, 1991, revealed certain problems with Cascade's accounting
and public disclosures.  For example, the Newsletter noted
that Cascade (i) does not release comparable same-store sales
figures which analysts can use to gauge store performance; and
(ii) does not provide a listing of stores by city.  The
Newsletter also criticized the quality of Cascade's audited
financial statements.

28.  In response to these negative revelations,
Cascade stock immediately fell from $7¼ on October 1, 1991 to

-11-

$5^{7/8}$ on October 2, 1991 in heavy trading.  Since that time, Cascade's stock has continued to fall.

  29. On or about October 29, 1991, Dan Dorfman, a financial reporter with CNBC/FNN, reported that Richard Lilly of J.W. Charles found "a lot of irregularities" in Cascade's numbers.  Specifically:

    (a) Although Cascade claims to operate 126 women's' apparel stores, many could not be found in Texas, Connecticut or Rhode Island;

    (b) Ninety (90) of the Company's two hundred forty-five (245) cosmetic counters are only unattended racks;

    (c) Cascade only has one accountant (i.e. Levy), notwithstanding the fact it is a major retailer; and

    (d) It was hard to imagine that Cascade actually had a pretax margin of 29%.

  30. Throughout the Class Period, defendants' positive statements caused a significant rise in the price of Cascade's stock.  As of May 6, 1991, one day before the commencement of the Class Period, Cascade's stock closed at

$7⁵/⁸ per share.  By August 12, 1991, Cascade was trading as high as $11⁵/⁸ per share.

31.  As of the close of trading on October 29, 1991 Cascade's stock stood at $4¹/⁴ per share.  This constituted a drop of over 63% from its high in mid-August of 1991.

32.  Throughout the Class Period, the defendants knowingly or recklessly misrepresented or omitted the following material facts:

>      (a)  Comparable same-store sales figures were not disclosed.  If such figures had been disclosed, the decrease in Cascade's per store sales would have become apparent.

>      (b)  Cascade overstated the number of women's apparel stores which it operated.  For example, the Company disclosed that it operated 8 stores in Connecticut.  However, the Company apparently operates only 1 store within the State.

>      (c)  The level of cosmetic sales, which allegedly had contributed to the Company's increased profits for fiscal year 1991, was materially overstated by the Company.  Had the actual level of cosmetic sales been disclosed,

-13-

the Company's actual profits and earnings would have been materially lower.

33.  In or about August of 1990, Cascade purchased a controlling interest in Conston, a Pennsylvania corporation which had filed for protection under Chapter XI of the Federal Bankruptcy Code.  Conston operates a chain of women's clothing stores.  Conston was discharged from bankruptcy in April 1991. In June of 1991, Cascade agreed to accept 10 million Conston shares in exchange for forgiveness of $7.5 million of debt Conston owed to it.  That transaction resulted in Cascade's ownership of approximately 80% of Conston.

34.  Throughout the Class Period, the defendants knowingly or recklessly materially misrepresented the financial condition of Cascade because, even after it had acquired 80% interest in Conston, Cascade, in direct violation of Regulation S-X of the SEC and Generally Accepted Accounting Principles did not consolidate Conston's financials with those of Cascade's.  Instead, Conston was accounted for as an investment.  If Cascade had consolidated Conston, Cascade's reported earnings would have dramatically diminished because Conston was suffering larger losses.

35.  Throughout the Class Period, defendants participated in a continuous course of conduct to conceal adverse material information about the business, finances,

-14-

financial condition, and future financial prosperity of Cascade as specified herein.

36.   Throughout the Class Period, defendants individually and in concert, directly and indirectly, by the use and means or instrumentalities of interstate commerce and/or the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, finances, financial condition, and future financial prospects of Cascade as specified herein. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of fraudulent conduct as alleged herein in an effort to assure investors of Cascade's secure financial condition and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Cascade, its finances and businesses, in the light of the circumstances under which they were made not misleading, as set forth more particularly in the paragraphs herein, and engaged in transactions, practices and courses of business which operated as a fraud and deceit upon the purchasers of Cascade securities during the Class Period.

37.   Defendant Incendy, as an officer and director of Cascade, is liable as a direct participant in the wrongs complained of herein and as a controlling person of Cascade. Incendy was able to and did control, directly or indirectly, the content of the public statements and financial statements disseminated by Cascade.  With knowledge of the falsity of the statements contained therein and in reckless disregard of the true financial and operating condition of Cascade, he caused the complained of financial statements and omission of material facts as alleged herein.  He also signed and/or disseminated the public filings with knowledge or reckless disregard of the fact that the filings were materially misleading and false in the manner set forth above.

38.   Throughout the Class Period, the defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were available to them.  Such misrepresentations and/or omissions were intentional and done for the purpose of concealing Cascade's true financial and operating condition from the investing public.

39.   As a result of the deceptive practices and false and misleading statements and omissions, the market

-16-

price of Cascade common stock was artificially inflated during the Class Period.  In ignorance of the false and misleading nature of the representations described above, and the deceptive and manipulative devices employed by said defendants, plaintiff and the other members of the Class, in reliance on either the integrity of the market or directly on the statements and reports of defendants, purchased Cascade common stock at artificially inflated prices.

40.  If plaintiff and the other members of the Class had known of the materially and pervasively adverse information which was not disclosed by defendants, or had been aware of the truth behind the material misstatements, they would not have purchased Cascade's stock at the artificially inflated prices.

41.  By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

42.  Plaintiff and the other members of the Class have been damaged by defendants' violations as described in this Count and seek recovery for the damages caused thereby.

## COUNT II

### Defendants Incendy, Sirmans And Levy's
### Aiding and Abetting Liability

43.   Paragraphs 1 through 36 and 38-42, inclusive, are hereby repeated, reiterated and realleged as if fully set forth herein.

44.   Throughout the Class Period, the individual defendants participated in and aided and abetted a continuous course of conduct to conceal adverse material information about the business, finances, financial condition, and future financial prosperity of Cascade as specified herein.

45.   Throughout the Class Period, the individual defendants individually and in concert, directly and indirectly, by the use and means or instrumentalities of interstate commerce and/or the mails, engaged and participated in and aided and abetted a continuous course of conduct to conceal adverse material information about the business, finances, financial condition, and future financial prospects of Cascade as specified herein.  Said defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of fraudulent conduct as alleged herein in an effort to assure investors of Cascade's secure financial condition and continued substantial growth, which

-18-

included the making of, or the participation in the making of,
untrue statements of material facts and omitting to state
material facts necessary in order to make the statements made
about Cascade, its finances and businesses, in the light of
the circumstances under which they were made not misleading,
as set forth more particularly in the paragraphs herein, and
engaged in transactions, practices and courses of business
which operated as a fraud and deceit upon the purchasers of
Cascade securities during the Class Period.

46. Defendants Sirmans and Incendy as officers and
directors of Cascade, and Levy as its independent auditor,
charged with responsibility for the Company's compliance with
GAAS and GAAP and the accuracy of the Company's financial
reporting and its SEC filings, are liable as direct
participants in the wrongs complained of herein.  The
individual defendants were able to and did control, directly
or indirectly, the content of the public statements and
financial statements disseminated by Cascade.  With knowledge
of the falsity of the statements contained therein and in
reckless disregard of the true financial and operating
condition of Cascade, they caused the complained of financial
statements and omission of material facts as alleged herein.
They also signed and/or disseminated the public filings with
knowledge or reckless disregard of the fact that the filings

were materially misleading and false in the manner set forth above.

47.   Throughout the Class Period, the individual defendants had actual knowledge of the misrepresentations and omissions of material fact set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.   Such misrepresentations and/or omissions were intentional and done for the purpose of concealing Cascade's true financial and operating condition from the investing public.

48.   As a result of the deceptive practices and false and misleading statements and omissions, the market price of Cascade common stock was artificially inflated during the Class Period.   In ignorance of the false and misleading nature of the representations described above, and the deceptive and manipulative devices employed by said defendants, plaintiff and the other members of the Class, in reliance on either the integrity of the market or directly on the statements and reports of defendants, purchased Cascade common stock at artificially inflated prices.

49.   If plaintiff and the other members of the Class had known of the materially and pervasively adverse information which was not disclosed by defendants, or had they

-20-

been aware of the truth behind material misstatements, they would not have purchased Cascade's common stock at artificially inflated prices.

50.   By virtue of the foregoing, the individual defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.   Plaintiff and the other members of the Class have been damaged by the individual defendants' violations as described in this Count and seek recovery for the damages caused thereby.

## COUNT III

### Defendant Incendy's Violation
### Of Section 20 Of The Exchange Act

52.   Paragraphs 1 through 42 inclusive are hereby repeated, reiterated and realleged as if fully set forth herein.

53.   Defendant Incendy, because of his position, ability to exercise power and influence with respect to Cascade's course of conduct, and his access to material inside information about Cascade, at the time of the wrongs alleged herein was a controlling person of Cascade within the meaning of Section 20(a) of the Exchange Act.  Such defendant had and

exercised the power and influence to cause Cascade to engage in the illegal practices complained of herein.

54.   The aforementioned acts committed by Incendy constitute violations of Section 20 of the Exchange Act.

55.   Plaintiff and the other members of the Class have been damaged by defendant's violations as described in this Count and seek recovery for the damages caused thereby.

<u>COUNT IV</u>

<u>Common Law Fraud</u>

56.   Paragraphs 1 through 42, inclusive, are hereby repeated, reiterated and realleged as if fully set forth herein.

57.   Defendants owed to plaintiff and the other members of the Class, a duty of full disclosure, honesty and complete candor, as well as a duty to exercise reasonable care and to make a reasonable and diligent investigation of the public statements regarding Cascade, including the SEC filings and public statements described above.

58.   The aforementioned public statements made by defendants were materially false and misleading in that they failed to disclose material adverse information about the

business operations, financial condition and prospects of Cascade.

59.   For the purpose of inducing public investors, including plaintiff and the other members of the Class, to purchase or acquire Cascade shares of stock, and with the intent to deceive such investors, defendants employed a scheme, common course of conduct to defraud.

60.   In furtherance of said scheme and common course of conduct, defendants made and perpetuated, participated in the making of, and aided and abetted the making of the material misrepresentations and admission of material facts to plaintiff and the other members of the Class.

61.   Said public statements were untrue when made, and defendants in fact believed them to be false when made.

62.   Defendants' acts were willful, wanton, fraudulent, oppressive and malicious.

63.   Plaintiff and the other members of the Class, at the time of their purchases or acquisitions of Cascade stock, were ignorant of the falsity of defendants' statements, and believed them to be true.

64.   In reliance upon defendants' statements, the integrity of the market for Cascade securities and the

-23-

fidelity, integrity, fiduciary responsibility and superior knowledge of defendants, and in ignorance of the truth, plaintiff and the other members of the Class were induced to and did purchase or acquire Cascade stock at artificially inflated prices.

65.  If plaintiff and the other members of the Class had known the truth, they would not have purchased or acquired Cascade stock at artificially inflated prices.

66.  As a direct and proximate result of defendants' acts and conduct, plaintiff and the other members of the Class were defrauded and suffered damages thereby.

67.  In light of defendants' willful, wanton and malicious conduct, plaintiff and the other members of the Class hereby request punitive and exemplary damages.

<u>COUNT V</u>

<u>Negligent Misrepresentation</u>

68.  Paragraphs 1 through 35, inclusive, are hereby repeated, reiterated and realleged as if fully set forth herein.

69.  Defendants made and participated in the making of representations of facts to plaintiff and the other members

-24-

of the Class by means of the various documents, reports, releases and statements as set forth above.

70.   As alleged in the foregoing paragraphs of this Complaint, said representations were materially false and misleading and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Said misrepresentations and omissions were a result of the individual, joint and several acts of negligence and carelessness of the defendants.

71.   It was reasonably foreseeable to the defendants that plaintiff and the other members of the Class would rely upon the material misrepresentations and omissions in purchasing their shares of Cascade stock at the prices paid.

72.   Furthermore, it was also reasonably foreseeable to defendants that their negligence and carelessness would result in damages to plaintiff and the other members of the Class.

73.   At the time of said misrepresentations and omissions, plaintiff and the other members of the Class were ignorant of the falsity of defendants' statements, and believed the statements that were made to be true.

-25-

74.   In reliance on said misrepresentations and omissions, and upon the superior knowledge and expertise of defendants, and in ignorance of the true facts, plaintiff and the other members of the Class were induced to, and did, purchase Cascade common stock at artificially inflated prices.

75.   If plaintiff and the other members of the Class had known the true facts, they would not have taken such actions.   By reason thereof, they have been damaged.

COUNT VI

Breach Of Defendants'
Fiduciary Relationship And Duty

76.   Paragraphs 1 through 42, inclusive, are hereby repeated, reiterated and realleged as if fully set forth herein.

77.   Throughout the Class Period, Cascade was the company whose shares of stock were purchased or acquired by plaintiff and the other members of the Class, Incendy and Sirmans were officers and directors of Cascade; and Levy was the independent auditor of Cascade.

78.   As a result of the relationship between defendants and plaintiff and the other members of the Class, a fiduciary relationship existed between and among them.

-26-

79.   As previously stated herein, defendants employed embarked upon a course of conduct to defraud plaintiff and the other members of the Class.

80.   The conduct of the defendants constitutes a breach of their fiduciary relationship to plaintiff and the other members of the Class.  By reason thereof, plaintiff and the other members of the Class have been damaged.

81.   In light of the willful, wanton and malicious nature of defendants' acts and conduct, plaintiff and the other members of the Class also request punitive and exemplary damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, plaintiff, on behalf of himself and the other members of the Class, pray for judgment as follows:

1.   Declaring this action to be a proper Class action maintainable pursuant to Rule 23(b)(3) of the Fed. R. Civ. P. and declaring plaintiff to be a proper Class representative;

2.   Awarding plaintiff and the other members of the Class compensatory damages on Counts I-VI, and punitive and exemplary damages on Counts IV and VI, suffered as a result of

the wrongs complained of herein together with appropriate interest;

     3.    Awarding plaintiff and the other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements; and

     4.    Awarding plaintiff and the other members of the Class such other and further relief as may be just and proper under the circumstances.

### JURY TRIAL DEMANDED

     Plaintiff and the other members of the Class hereby demand a trial by jury of all issues so triable.

Dated:     November 1, 1991     Respectfully submitted,

     WAMPLER, BUCHANAN & BREEN

     By:     _____
     Atlee W. Wampler, III
     Florida Bar No. 311227
     900 Sun Bank Building
     777 Brickell Avenue
     Miami, Florida 33131
     (305) 577-0044

Of Counsel:

Jill S. Abrams
Andrew G. Weiss
ABBEY & ELLIS
212 East 39th Street
New York, New York 10016
(212) 889-3700